FILED

U.S.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ SEP 3 0 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JULIANO TORRES-CUESTA,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

09 CV 91 (SJ)

<u>MEMORANDUM
AND ORDER</u>

U.S

★ ★

BROOKLYN OFFICE

A P P E A R A N C E S

JULIANO TORRES-CUESTA
#91132-079
FB
Federal Correctional Institution-Elkton
P.O. Box 10
Lisbon, OH 44432
PRO SE
Attorney for Petitioner

UNITED STATES ATTORNEY
Eastern District of New York
Loretta Lynch
271 Cadman Plaza East
Brooklyn, NY 11201
By:   Robert Lloyd Capers
718-254-6346
Fax: 718-254-6481
Email: Robert.Capers@usdoj.gov
Attorney for Respondent

1

JOHNSON, Senior District Judge:

Petitioner Juliano Torres-Cuesta ("Petitioner"), acting pro se, has petitioned this Court pursuant to 28 U.S.C. § 2255, to vacate or set aside his sentence and to re-sentence him. For the reasons stated below, Petitioner's application is DENIED.

## BACKGROUND

Both parties agree to the basic facts giving rise to this matter. In September 2005, as part of an ongoing investigation into narcotics trafficking, members of the Drug Enforcement Administration ("DEA")'s Organized Drug Enforcement Strike Force ("Strike Force") received information that Petitioner was distributing multiple-kilogram quantities of cocaine in New York City. On September 6, 2005, the Strike Force agents, in an attempt to arrest Petitioner, blocked his vehicle as he was exiting a warehouse. Here is where the agreement ends.

According to Petitioner, the vehicles were unmarked and had no emergency lights on, and he fled believing he was being robbed. The Government's version, pursuant to a DEA report of the incident dated October 17, 2005 (Gov't Mem. of Law Ex. A ("DEA Report")), is that Petitioner attempted to escape arrest and fled as the agents chased him with their emergency lights and sirens activated. (DEA Report ¶ 4). The DEA agents reported that once they caught up with Petitioner, he allegedly refused comply with their orders to put his

2

hands behind his back and had to be physically restrained. (Id.). Petitioner claims that he surrendered peacefully and was unjustly beaten by the agents after he was placed into handcuffs. (Pet. Mem of Law at 2).

Petitioner was charged with a two-count indictment for conspiracy to distribute and possession with the intent to distribute cocaine. See Docket No. 05 CR 744, Entry 10 (SJ)-2. Petitioner subsequently entered into a plea agreement with the Government, (Plea Agreement, Gov't Mem. of Law Ex. B, (the "Plea Agreement")), in which Petitioner agreed to plead guilty to count one of the indictment. Specifically, Petitioner agreed to plead guilty to conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii)(II) ("Count One").

As laid out in the Plea Agreement, Count One carried a maximum sentence of life, a mandatory statutory minimum of twenty years due to a prior narcotics felony, and a fine. (Plea Agreement ¶ 2). The Plea Agreement estimated that the United States Sentencing Guidelines (the "Guidelines") sentencing range would be 135-168 months, but stated that the applicable sentence would be 240 months due to the imposition of the mandatory minimum. (Id.). As in most standard plea agreements, paragraph four contained a waiver under which Petitioner agreed that he would not file an appeal or otherwise challenge his

3

conviction or sentence as long as the Court imposed a sentence of 240 months or less. (Id.).

On May 19, 2006, Petitioner pled guilty pursuant to the Plea Agreement. This Court, following the procedures of Rule 11, Federal Rules of Civil Procedure, determined that Petitioner was capable of entering an informed plea, that he was aware of the nature and the consequences of his plea, and that the plea was knowing and voluntary. (Plea Proceeding Transcript, Gov't Mem. of Law Ex. C ("P. Tr.") at 5). Specifically, the Court determined that Petitioner: (i) understood the nature of the charge and the maximum possible penalties (P.Tr. at 4); (ii) understood the operation of the Guidelines (Id. at 5); (iii) was pleading guilty voluntarily and not as a result of any coercion, threats, or promises (Id. at 4, 10); and (iv) was pleading guilty because he was guilty and not for any other reason. (Id. at 8-10); see also Fed. R. Crim. P. 11(c) and (d). In response to the Court's inquiry, Petitioner admitted that he had been arrested with cocaine in his car and that he knew it was cocaine. (P.Tr. at 8-9). Petitioner further represented that he understood that the statutory maximum term of imprisonment was life and the statutory minimum term of imprisonment was 20 years. (Id. at 4, 9-10). Petitioner was asked twice whether he understood that he was agreeing not to challenge his conviction or sentence as long as his sentence is 240 months or below. (Id. at 6). Petitioner responded twice, "I understand." (Id.)

4

At his sentencing hearing, held on November 30, 2006, Petitioner raised his displeasure with his attorney, Jack Sachs, Esq. Specifically, Petitioner complained that Mr. Sachs refused to meet with him and that Mr. Sachs did not provide him with the discovery in his case. (Sentencing Hearing Transcript, Gov't Mem. of Law Ex. F ("S. Hr'g Tr.") at 2-3). Regarding discovery, Mr. Sachs responded that according to the terms of the Plea Agreement, Petitioner no longer had the right to additional discovery. (S. Hr'g Tr. at 3-5). Mr. Sachs further countered that he'd met with Petitioner several times and informed him that due to his criminal background and the nature of the charges, his best hope would be to cooperate with the Government in the hopes of obtaining a 5K1 letter. (Id.). Those efforts at cooperation were stymied by the Government's perception that Petitioner was not telling the truth. (Id. at 4). Lastly, Mr. Sachs conceded that Petitioner had strong objections to the factual allegations in the PSR concerning the circumstances surrounding his arrest and the Government's position that he attempted to escape arrest. (S. Hr'g Tr. at 4-5). Mr. Sachs submitted a letter to this Court dated October 21, 2006 addressing those objections. This Court credited Mr. Sachs' explanations, declined to replace Mr. Sachs, and sentenced Petitioner to a total of 240 months. (S. Hr'g Tr. at 8).

In his § 2255 Motion, filed on February 27, 2009, Petitioner challenges his sentence on the grounds that: (1) his plea was not knowing or voluntary; (2) trial counsel provided ineffective assistance of counsel by: (a)

5

failing to advise him of his defenses; (b) failing to provide him with discovery materials; (c) failing to file a claim for outrageous government conduct; and (d) failing to inform him of the enhancement penalty for prior felonies; (3) appellate counsel provided ineffective assistance of counsel by: (a) failing to investigate Petitioner's claims; (b) failing to raise an ineffective assistance of counsel argument; (c) failing to challenge the two-level enhancement for obstruction of justice; and (d) failing to address this Court's alleged error in stating that his sentence was mandatory; (4) the Government's "outrageous conduct" during the course of his arrest "shocks the conscience" and is grounds to vacate or even dismiss his conviction; and (5) Petitioner received an improper two level enhancement for obstruction of justice.

On May 20, 2009, Mr. Sachs signed a declaration responding to the § 2255 Motion (Gov't Mem. of Law, Ex. G ("Sachs Declaration")). On June 17, 2009, the Government filed its objections to Petitioner's § 2255 motion. On September 3, 2010, Petitioner filed his response.

## DISCUSSION

Section §2255 provides for a hearing on a habeas petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see also Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003). The Second Circuit has recognized that a district

P-049

court has a "wide variety of tools available to it in developing the record during habeas proceedings," Pham, 317 F.3d at 180, and, rather than holding an evidentiary hearing, may "decid[e] disputed facts on the basis of written submissions," id. at 184.

The record in this case is more than sufficient to resolve the disputed factual issues without a hearing and supports denial of Torres-Cuesta's petition. See Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001); see also 28 U.S.C. § 2255(b).


I.        Petitioner Has Waived His Right to Appeal

Petitioner's Plea Agreement contained an appeal-waiver provision, under which Petitioner agreed not to "file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of 240 months or below." (Plea Agreement at 4). The agreement further notes that the "waiver is binding without regard to the sentencing analysis used by the Court." (Id.). As this Court ultimately sentenced Petitioner to 240 months, his right to bring the instant petition has been waived and the § 2255 Motion must be denied as such.

It is well settled in this circuit that an agreement waiving the right to appeal a sentence is enforceable as long as it was knowing and voluntary. See Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) (upholding

7

defendant's waiver as knowing and voluntary); <u>United States v. Stevens</u>, 66 F.3d 431, 437 (2d Cir. 1995) (same).  In <u>Garcia-Santos</u>, the Second Circuit agreed that the plea agreement at issue was entered into knowingly and voluntarily, and that the petitioner was aware that he was waiving his appeal and collateral attack.  <u>Id.</u> at 508.  In explaining its ruling, the Court pointed to the fact that the petitioner signed a plea agreement, that he stated that he read and understood that agreement, and that he never claimed that he did not understand the waiver.  <u>Id.</u> Likewise, here, Petitioner stated to this Court that he read and understood the Plea Agreement, that he discussed the Plea Agreement with his attorney, and that he was aware of and understood that he was waiving appeal and collateral attack.  (S. Tr. Hr'g 4-6).

Petitioner suggests that his attorney "coached" him during his plea colloquy, rendering his waiver invalid.  However, Petitioner provides no evidence that would place the validity of his plea in doubt.  Petitioner has not cited, and this Court has not found, any case law setting aside a plea based on a bare allegation of improper coaching.  <u>See</u>, <u>e.g.</u>, <u>U.S. v. Molina-Rascon</u>, 296 Fed.Appx. 653, 656 (10th Cir. 2008) (declining to accept a petitioner's argument that his plea was invalid where it was supported only by the "bare allegation" that his attorney improperly coached him); <u>Nesbitt v. U.S.</u>, 773 F.Supp. 795, 800 (E.D.Va. 1991) (noting that "[d]espite petitioner's contention that he was coached on his answers, he makes no claim that he was instructed to answer the Court's questions falsely

or that he was threatened with harm if he did not answer falsely" and declining to find the plea involuntary); <u>Hernandez v. U.S.</u>, No. 09 Civ. 6496, 2010 WL 1558559 (S.D.N.Y. Apr. 19, 2010) (rejecting Petitioner's allegations of coaching and noting that his counsel obtained a better sentence and thus, the prejudice prong of <u>Strickland</u> would fail regardless).

Furthermore, like the petitioner in <u>Garcia- Santos</u>, Petitioner here has never stated - in his § 2255 Motion, his response to the Government's opposition, or anywhere else - that he did not understand that he was waiving his rights. Petitioner's attorney, the Government, and this Court explained Petitioner's sentencing exposure to him on a number of occasions. (Sachs Decl. at 2; S. Hr'g Tr. at 4). It does not seem possible that Petitioner remained confused.

What appears to have happened is the disappointment sometimes borne by wishful thinking. The Plea Agreement and Petitioner's Presentence Investigation Report, prepared August 7, 2006 (Presentence Investigation Report, Gov't Mem. of Law, Ex. D ("PSR")), clearly indicate that because of Petitioner's prior felony, he was facing a mandatory 20-year minimum. (Plea Agreement at 4; PSR at 21). In fact, Petitioner admits that the "20 year possibility [was] previously stated by the Court and noted in the plea agreement." (Pet. Mem. of Law at 5). However, Petitioner heard that his waiver would go into effect in the event he received a sentence of 240 months or less and took that statement as a sign of hope that his sentence might venture below the 240 months he'd been advised of. (Id.).

9

There is no greater disappointment then the dashing of one's hopes, especially when life or liberty is at stake. However, while sad, this disappointment does not render Petitioner's waiver unknowing or involuntary.

II.       Petitioner's §2255 Motion Claim Further Fails on the Merits

Even if Petitioner's § 2255 Motion wasn't procedurally barred, it would fail on the merits. Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). However, a defendant must meet a particularly weighty burden to sustain this claim. In Strickland v. Washington, 466 U.S. 668, 688 (1984), the Supreme Court established a two-part test to determine whether counsel's assistance was ineffective. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . ." Strickland, 466 U.S. at 688. When evaluating counsel's performance, courts give deference to the attorney, since it is all too tempting for a defendant to second-guess counsel's assistance after conviction. To fairly assess an attorney's performance, courts eliminate the effect of hindsight by reconstructing the circumstances of counsel's conduct from counsel's perspective. Thus, to meet the first prong of the Strickland test, Petitioner must overcome the strong presumption that the challenged action was sound trial strategy under the circumstances at the time. Id. at 689.

P-049

Second, the defendant must show that counsel's performance prejudiced his defense. Id. at 692. To show prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. Thus, the petitioner must demonstrate that counsel failed to raise significant and obvious issues that if raised, would likely have been successful. Mayo v. Henderson, 13 F.3d 528, 533-34 (2d Cir. 1994). Because a convicted defendant will always have a strong incentive to make a prejudice claim after conviction, courts are skeptical of "self-serving, post-conviction testimony" that but for counsel's bad advice, the defendant would have pled guilty or gone to trial. See Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003) (in addressing prejudice showing required on ineffective assistance claim, court noted that "a convicted felon's self-serving testimony is not likely to be credible"). A defendant must meet both prongs to prove that the conviction resulted from a breakdown in the adversary process.

### a. Trial counsel's representation was not ineffective

Strickland's the first prong - constitutional deficiency - is necessarily linked to the practice and expectations of the legal community: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id., at 688, 104 S.Ct. 2052. Courts have long recognized that "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable

11

... ." Ibid.; <u>Bobby v. Van Hook</u>, 558 U.S. ----, ----, 130 S.Ct. 13, 16, 175 L.Ed.2d 255 (2009) (per curiam); <u>Florida v. Nixon</u>, 543 U.S. 175, 191, and n. 6, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004); <u>Wiggins v. Smith</u>, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). And although they are "only guides," <u>Strickland</u>, 466 U.S., at 688, 104 S.Ct. 2052, and not "inexorable commands," <u>Bobby</u>, 558 U.S., at ----, 130 S.Ct., at 17, these standards may be valuable measures of the prevailing professional norms of effective representation. Counsel is not required to present meritless arguments to the court; the failure to file meritless arguments cannot form the basis of an ineffective assistance of counsel claim.

Here, Petitioner faults counsel for failing to object at sentencing when this Court stated that it was imposing the sentence of 240 months because it was "mandatory and minimum" and made in consideration of the factors of 3553(a). (S. Hr'g Tr. at 8). Petitioner argues that the statement that the sentence was "mandatory and minimum" violated the precedent of <u>United States v. Booker</u>, 543 U.S. 220, 160 L.Ed.2d 621, 125 S.Ct. 738 (2005). Petitioner is mistaken. The sentence of 240 months was mandated and minimum by statute. This Court did consider the factors of 3553(a) to determine whether to give Petitioner a sentence beyond the mandated minimum, but it in no way suggested that a Guideline sentence (which was not applied) was anything more than advisory. Thus, there was nothing for Mr. Sachs to object to. Petitioner further argues this Court should have enumerated the factors in 3553(a) and that counsel should have presented

12

some mitigating factors for counsel's consideration prior to sentence. However, this Court is not required to enumerate each factor of 3553(a) and give the defendant a detailed analysis of its reasoning for imposing a particular sentence. As the Petitioner's sentence was the minimum mandated by statute, any consideration of whether Petitioner should receive a sentence higher than the minimum clearly went in his favor.

Regarding the decision to accept the Plea Agreement and change his plea, Petitioner argues that Mr. Sachs failed to exhaust his defenses and counsel him on his options. "Actions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance." <u>U.S. v. Berkovich</u>, 168 F.3d 64, 67 (2d Cir. 1999) (citing, <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. 2052); <u>see</u> <u>also</u>, <u>U.S. v. Arena</u>, 180 F.3d 380, 397 (2d Cir. 1999) (in light of the overwhelming government evidence, conceding certain facts was trial strategy and could not form the basis of an ineffective assistance of counsel claim). Mr. Sachs believed, and this Court agrees, that the decision to plead guilty was reasonable trial strategy in light of the Government's evidence and Petitioner's admissions. (<u>See</u> DEA Report ¶¶ 7-9; P.Tr. at 8-9; S. Hr'g Tr. at 3-4; Sachs Decl.). Petitioner's post-hoc doubts or disagreements with his counsel can't support his ineffective assistance of counsel claim. <u>United States v. Sanchez</u>, 790 F.2d 245, 253 (2d Cir. 1986) ("[a] defendant may not claim ineffective assistance of counsel merely because in hindsight he thinks counsel's trial strategy was inadequate"); <u>Raposo v.</u>

13

United States of America, No. 01 Civ. 5870, n. 5 (S.D.N.Y. May 7, 2004) (denying ineffective assistance of counsel claim where "[s]trictly speaking, the 38 issues Petitioner now alleges trial counsel ignored or refused to response to are more appropriately dealt with as a disagreement with counsel on trial strategy").

Petitioner's claims that counsel erred in failing to object to the upward adjustment for obstruction of justice enhancement is equally unavailing as a ground for ineffective assistance of counsel. Petitioner's objections to the PSR's description of his arrest were filed by his counsel with this Court prior to sentencing. However, as stated above, because Petitioner was subject to a mandatory minimum, the enhancement for obstruction of justice did not impact his sentence and counsel cannot be said to be ineffective for failing to address this at sentencing.

Petitioner also claims that his trial counsel was ineffective for failing to provide additional discovery and for failing to argue outrageous governmental conduct. As discussed above, Petitioner waived the right to additional discovery by entering into the Plea Agreement. Mr. Sachs states that he explained this him. (Sachs Decl. at 2). Furthermore, Petitioner has not pointed to any exculpatory discovery that would have been obtained. In fact, in light of his admissions in his sentencing memorandum and at the plea allocution, "the impact of any material the prosecution might have had that would have been exculpatory is unexplained and inexplicable." Makas v. Holanchock, No. 9:02-cv-00836-JKS,

14

2007 WL 1651830, at *14 (N.D.N.Y. June 7, 2007) (denying the ineffective assistance of counsel claim). Thus, Petitioner's claims of ineffective assistance of counsel regarding discovery must fail on both prongs of the Strickland test.

Petitioner doesn't fare any better with his arguments regarding trial counsel's failure to raise an outrageous government conduct claim. Again, this appears to be a deliberate strategy, not a careless mistake. Both Mr. Sachs and Petitioner's appellate counsel declined to assert an outrageous government conduct claim on the belief that the claim had no merit and would likely fail. (Sachs Decl. at 2; see also, Berkovich, 168 F.3d at 67; Arena, 180 F.3d at 397 (2d Cir. 1999)).

### b. Appellate counsel's representation was not ineffective

Michael S. Pollack. Esq. served as Petitioner's counsel for his appeal of this Court's sentence. On July 18, 2007, Petitioner's appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396 (1997), ("Anders Motion"), with a certification stating that he felt there were no non-frivolous legal or jurisdictional grounds to prosecute a direct appeal. U.S.A. v. Torres, No. 06 CR 5651, 2007 WL 5444614 (2d Cir. July 1, 2007) (Appellate Br.). Petitioner argues that Mr. Pollack's conclusions in the Anders Brief were erroneous, and that his representation was ineffective because: 1) Mr. Pollack failed to investigate Petitioner's claims; 2) Mr. Pollack failed to raise an ineffective assistance of counsel argument; 3) Mr. Pollack failed to challenge the

15

two-level enhancement for obstruction of justice; and 4) Mr. Pollack failed to address this Court's alleged error in stating that his sentence was mandatory.

The Court of Appeals of the Second Circuit will not grant an Anders motion unless it is satisfied that (1) "counsel has diligently searched the record for any arguably meritorious issue in support of his client's appeal," and (2) "defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct." United States v. Burnett, 989 F.2d 100, 104 (2d Cir. 1993). In the context of a guilty plea, counsel's Anders brief must discuss why a challenge to the guilty plea would result in an unacceptable risk of adverse consequences and why there are no non-frivolous issues with respect to the plea. See United States v. Ibrahim, 62 F.3d 72, 73-74 (2d Cir. 1995). By granting the motion, the Second Circuit indicated its belief that this standard had been met.

Moreover, beyond his statements that Mr. Pollack failed to assert arguments Petitioner felt were strong, Petitioner has not shown that a change in Mr. Pollack's performance would have changed the outcome in his case. "The filing of an Anders brief does not itself constitute ineffective assistance of counsel." Jorge v. United States, 818 F.Supp. 55, 57 (S.D.N.Y. 1993) (citing McCoy v. Court of Appeals of Wisconsin District I, 486 U.S. 429, 442-44, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988)); see also, Marulanda v. U.S., No. 07 CV 5301(SJ), 2009 WL 154631, at *5 (E.D.N.Y. June 2, 2009) ("refusal to raise non-meritorious arguments on appeal does not constitute ineffective assistance of

16

counsel"). Petitioner's appellate counsel found no merit in his claims, and the Second Circuit agreed when it granted counsel's <u>Anders</u> Motion. That determination alone does not render Mr. Pollack's counsel ineffective.

Finally, the diaphanous arguments raised in Petitioner's reply to the Government's opposition to his § 2255 Motion, filed on September 3, 2009 (the "Reply"), need not detain us long either. First, the Reply is styled as an amendment to the § 2255 Motion, but does not assert any new arguments. Second, the record blatantly contradicts the arguments that are presented. Petitioner argues that his counsel was ineffective for failing to argue that the Government breached the Plea Agreement when it filed a Prior Felony Information. (Reply at 2). However, the Plea Agreement contemplates that "because the statutory mandatory minimum term of incarceration is twenty years the applicable sentence is expected to be 240 months." (Plea Agreement ¶ 2). Specifically, the Plea Agreement states that "defendant stipulates that the instant offense was committed after a conviction for a felony drug offense had become final." (Id.). Furthermore, a review of the docket in the criminal case indicates that the Prior Felony Information was filed with the Court on April 10, 2006 (No. 05 CR 744 (SJ)-2, Docket Entry No. 19), a month before the Plea Agreement was signed on May 19, 2006. This is not the last minute bait and switch that Petitioner describes. As there was no breach of the Plea Agreement, counsel cannot be ineffective for failing to assert this argument.

17

Since Petitioner has not shown that the efforts of his counsel on trial or appeal fell below an objective standard of reasonableness, his claim of ineffective assistance of counsel must fail.

III.  <u>Allegations of Other Constitutional Violations Lack Merit</u>

    a.  *It was not a due process violation to inform Petitioner that his sentence was mandatory*

As discussed above, Petitioner's argument that this Court erroneously informed him that his sentence was "mandatory and minimum" must fail as well. Petitioner argues that "his Due Process (sic) rights were violated because the district court imposed a sentence that it believed was mandatory in nature" because the Guidelines are only "advisory." (Pet. Mem. of Law at 17). As stated in the Plea Agreement, and explained by this Court and counsel, Petitioner's 240 month sentence was a mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(ii)(II), the statute to which he pled guilty. (Plea Agreement ¶ 1). This was not a Guideline sentence, and any reference to the mandatory nature of the sentence was not a reference to the Sentencing Guidelines. Petitioner's alleged confusion or misunderstanding is not a due process violation and is certainly not grounds to review his sentence. Even if this Court were to resentence Petitioner, his sentence would be the same as the one actually imposed.

    b.  *Petitioner has not demonstrated outrageous governmental conduct that "shocks the conscience"*

18

It is true that a defendant's right to a fair trial may be violated by governmental conduct that is fundamentally unfair or shocking to our traditional sense of justice, or so outrageous that common notions of decency and fairness would be offended by the defendant's conviction. United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997). Police involvement, however, must reach a "demonstrable level of outrageousness before it could bar conviction." Id. (quoting Hampton v. United States, 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)). Ordinarily such misconduct would involve coercion or violation of the defendant's person. Id. "Absent such extreme misconduct, reversal of a conviction is rare." Id. (citing United States v. Myers, 692 F.2d 823, 837 (2d Cir. 1982); United States v. LaPorta, 46 F.3d 152, 160 (2d Cir. 1994)).

To establish a due process defense to prosecution a defendant must show that (1) the government violated a protected right of the defendant and (2) the government's conduct is sufficiently outrageous. See United States v. Cuervelo, 949 F.2d 559, 565 (2d Cir. 1991) ("In federal court . . . due process principles may bar the government from invoking the judicial process to obtain a conviction" if the government's conduct "reach[ed] a demonstrable level of outrageousness.") (citation omitted; alteration in original); see also United States v. Chin, 934 F.2d 393, 398 (2d Cir. 1991) ("[T]he existence of a due process violation must turn on whether the governmental conduct, standing alone, is so offensive that it shocks the conscience.") (internal quotation marks omitted).

19

P-049

Here, even if Petitioner had some evidence to support his claim, the injuries he alleges do not rise to the level required to have an indictment dismissed for extreme and outrageous governmental conduct. See, e.g., Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (police officers broke into defendant's bedroom, attempted to pull drug capsules from his throat, and forcibly pumped his stomach to retrieve the capsules); Huguez v. United States, 406 F.2d 366, 381-82 (9th Cir. 1968) (border patrol officers forcibly removed narcotics packets from defendant's rectum while defendant was handcuffed and held spread eagled across the table by other officers). The use of physical coercion such as that involved in Rochin and Huguez is unconstitutional because it causes injuries that are "brutal and ... offensive to human dignity." Rochin, 342 U.S. at 174, 72 S.Ct. at 210. Petitioner's allegations that he was punched and kicked do not rise to the level of severity needed to overturn an indictment for outrageous governmental conduct. See United States v. Berkovich, 168 F.3d 64, 68-69 (2d Cir. 1999) (noting that a due process challenge to an indictment based on outrageous government conduct has almost never succeeded).

As this argument has no merit, Petitioner's trial and appellate counsel were not ineffective for failing to assert it. See, e.g., Knutson v. U.S., No. 00 CV 4830 (ILG), 2002 WL 31946878, at *5 (E.D.N.Y. Nov. 26, 2002) (where petitioner's claim of outrageous police conduct wasn't viable, "it follows that it

20

cannot have been ineffective assistance of counsel for his attorney not to have raised the defense").

CONCLUSION

For all of the reasons discussed above, Petitioner's § 2255 Motion is denied and the petition is dismissed in its entirety.

SO ORDERED.

DATED:      September 29, 2010       S/SJ
                 Brooklyn, New York      _____
                                  Sterling Johnson, Jr., U.S.D.J.